Henry G. Smith, J.,
delivered the opinion of the Court.
The Criminal Court of Memphis, pronounced judgment of fine and imprisonment, upon the charge of contempt, against M. C. Galloway & W. H. Rhea, the editors and publishers of the newspaper 'published at Memphis, called the Memphis Avalanche. The alleged contempt, upon which the judgment was rendered, was an editorial article published in the newspaper, purporting to give the particulars, and denouncing the ■ Judge of the Court as guilty of official corruption, in .discharging upon bail, a prisoner under indictment in that Court, for a felony. The publication was made a day or two after the discharge of the prisoner on bail.
Application is made to this Court by Galloway & Rhea, to revise and reverse the judgment of the Criminal Court, and discharge them from the sentence pronounced by that Court.
The clauses of the Code of Tennessee, in regard to contempt, dealt with in the opinion following, are these:
Sec. 4106. The power of th'e several Courts of this State, to issue attachments and inflict punishments for contempt of Court, shall not be construed to extend to any except the following cases:
1st. The willful misbehavior of any person in the presence of the Court, or so near thereto as to obstruct the administration of justice.
*329 2d. The -willful misbehavior of any of the officers of said Court, in their official transactions.
3d. The willful disobedience or resistance, of any officer of said Court, party, juror, witness, or any other person, to the lawful writ, process, order, rule, decree, or command, of said Court.
4th. Abuse of, or unlawful interference with the process or proceedings of said Court.
5th. Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.
6th. Any other act, or omission, declared a contempt by law.
The inferior Courts of Tennessee have no power to punish as contempts, the acts or omissions of parties and persons, other than such acts and omissions as are prescribed by the Code, or other statutory enactments.
Contempts at common law, which do not fall within the five clauses prescribed by the Code, or by other statutory enactments, are not punishable by the inferior Courts of Tennessee. The 6th sub-section of sec. 4106 of the Code, was not intended to embrace, and does not embrace, the vast and undefined scope of con-tempts at common law, outside of the classes prescribed by statutory enactments.
Such is the obvious and necessary construction of the Code, and such has been the universal opinion and practice of the Courts and the. profession in Tennessee, since the passage of the Act of 1831, ch. 19, which is substantially transferred to the Code.
*330 The power to punish contempts, where limitations have been put on the power by statute, came under review in the Circuit Court of the United States, for the Eastern District of Pennsylvania, wherein Mr. Justice Baldwin of the Supreme Court of the United States, held in the case Exparte Poulson, that the Act of Congress of March 2d, 1831, ch. 99, which is similar to the provisions of the Code of Tennessee on this subject, (excepting as to sub-section 6,) withdrew from the Courts of the United States the common law power, to protect their suitors, witnesses, officers, and themselves, against the libels of the press, though published and circulated pending the very trial of a cause. It is altogether probable, that the breadth of expression employed by Judge Baldwin, to declare the immunity of the press, may require limitation, in' case the matter published be of a character, and vicinity to the Court, so as fairly to bring it within the class prescribed by the Code, which consists in “the willful misbehavior of a person so near to a Court as to obstruct the administration of justice.” See Poulson’s case, cited and commented upon, in 1 Kent’s Commentaries, 301.
This disposes of the main question in the case. The argument submitted on behalf of the State, concedes that the first five sub-sections of the Code, which designate the special causes of contempt, furnish no sanction to the judgment rendered against the defendants; and that the judgment is without sanction of law, unless the. 6thsub-section bestows upon the Criminal *331 Court, tbe power to punish contempts at common law, other than such as are made punishable by the Code or statute.
There being manifest error in the construction given by the Criminal Court to the 6th sub-section of section 4106, the question is, whether this Court can revise and annul the judgment founded on such error.
The case is brought here in two modes. 1st, By writ of error to the original judgment: and 2d, By writ of error to the judgment of the Municipal Court of Memphis, dismissing for alleged want of jurisdiction, the writ of habeas corpus sued out in that Court by the defendants, to be discharged from imprisonment under the original judgment, on the alleged ground that the original judgment was void and the imprisonment under it illegal.
The power to punish for contempts is absolutely essential to the protection and existence of Courts. To be effectual, the power must be instant and inevitable. Hence, in England and America, the whole current of judicial authority is, with very rare exceptions in the American Courts, that a judgment of conviction for contempt, is not subject to the revision, by appeal, writ of error, or otherwise, of any other Court, co-ordinate or superior. Using the language of Ruffin, Chief Justice, pronouncing the opinion of the Court in exparte Summers, 5 Iredell Rep., 152: “From the very nature of contempts, and in order that the punishment may be efficacious, the punishment must be immediate and per-: emptory, and not subject to suspension by appeal, at the mere will of the offender, nor by any proceeding *332 in the nature of an appeal. Suppose one to come into Court and curse and abuse the Judge on the bench? Or, suppose the sheriff, with a writ in his hand, in the presence of the Court, positively refuses to return it, so that the party’s action will be discontinued? What would sentence for these contempts be worth, if the culprit could supersede them by appeal, certiorari or writ of error? Manifestly nothing; and the authority-of the Court would be really contemptible, if it could be thus eluded and prostrated.”
And to the same effect, it is said in 2 Bishop Crim. Law. sec. 254, (221,) “that the very nature of a contempt is such as compels the Court, against whom it is committed, to proceed against it, and precludes any other or superior tribunal from taking cognizance of it, whether directly or on appeal, or otherwise.”
The like ruling has been heretofore made in this Court, in the case of P. H. Darby, reported in 3 Wheeler’s Crim. Cases, 7; and in the case of Shumate, at Nashville, in the year 1824, and in Martin’s Case, 5 Yer., 456; See, also, Hist. Lawsuit, sec. 720.
It must, therefore, be held here, that a judgment for contempt cannot be brought from an inferior Court into this Court for revision, by writ of error, or appeal in the nature of a writ of error.
And it can make no difference that the judgment is alleged to be void upon its face. To hold otherwise, would precipitate into this Court, the whole flood of judgments for contempts, upon the ground of being void; and would greatly paralyze the power of the inferior Courts, indispensable to their efficiency and existence. *333 No doubt is entertained of the jurisdiction of this Court to reverse and annul ordinary judgments which are void, and because they are void. But it is quite another thing, to hold that this Court ought to exercise, or has appellate jurisdiction in regard to judgments for contempt, because, and for the reason only, that they are void. The rule, we think, proper and in harmony with the practice of the Courts everywhere, is, that the judgment of a Court for contempt, is not subject to appellate revision. If such judgment be void, the law has provided other modes of redress sufficiently prompt and effectual and entirely compatible with the power of the Courts, to punish contempts promptly and effectually.
3d, An appeal or writ of error, does not lie to this Court, from the judgment of an inferior Court or Judge, discharging or refusing to discharge upon habeas corpus, a party from imprisonment for contempt. Obviously, such appeal or writ of error, is in conflict with the essential principle on which the habeas corpus is grounded; and that is, that release from illegal imprisonment should be speedy and effectual. If the party imprisoned can be allowed to appeal to a Supreme Court or Judge, the party imprisoning him can have the same right of appeal; and thus it would turn out that the party held in illegal custody, would be delayed of release, until the cause could “drag its slow length along,” through the successive Courts, to its ultimate and remote rest in the Court of last resort, after months or years of delay.
Upon this question, there is no variance of opinion *334 in the authorities, unless, perhaps, rarely, and when an appellate supervision may he allowed by statute.
In Tennessee, it has been held, that no appellate supervision exists to the judgment of a Circuit Judge refusing, upon habeas corpus, to discharge parties alleged to be held in illegal imprisonment: 3 Sneed, 413. The case was, where the writ was returnable into Court in term, and the cause was heard in Court, and the judgment rendered and entered of record as the judgment of the Court. The Supreme Court say: “The object of this great constitutional writ is, to obtain immediate relief from illegal confinement.” “The delay incident to appeals and writs of error, by either party, would defeat the very object of the process — which is, speedy and summary relief from imprisonment. If the party on whose application the writ issues can appeal, the party holding in custody must have the same right. So, the consequence of the right of appeal would be, that the unlawful confinement must continue until the action of the appellate Court could be had, which might be one or more years.”
But, it is said that this case in 3 Sneed, was so held upon the ground that the action of the Judge in Court, was no more than his action as Judge out of Court, and that no means of appellate supervision exist, as to the judgment of a Judge not of record in Court. Language of this import is employed by the Judge, who pronounced the opinion in the cause. It is not, however, understood that the judgment of this Court rested upon this point. The substantial and necessary principle upon which the decision stood, *335 was, and is, the incompatibility of appeal in such case, with the essential and indispensable virtue of the- proceeding upon habeas corpus, that it shall be speedy and effectual.
It works no change in this essential principle, that by the Code, enacted since the decision of the case in 3 Sneed, writs of habeas corpus are returnable to, and triable in Court, as well as before a Judge out of Court. A conclusion of gross error it would be, to suppose that the Legislature designed, by giving Courts, as well as Judges, jurisdiction in habeas corpus, to take away from the proceedings its fundamental and essential virtue, speedy efficacy, and subject it to the delays and bafflings of an ordinary law suit. It is nothing new, the giving to Courts jurisdiction in habeas corpus; the novelty is, in giving such jurisdiction to a Judge out of Court. And it has not been supposed that the fact that the jurisdiction was preserved by the Courts, subjected the proceeding to appellate delays, or authorized it to be subjected to delays in that manner.
This Court, therefore, holds that a judgment upon habeas corpus in the inferior Courts of the State, is not subject or liable to appeal in error, or writ of error, to this Court.
4th, The power of the Courts, to punish for con-tempts without appellate supervision, though absolutely essential to the protection, efficacy and existence of the Courts, is, nevertheless, capable of being exercised unwisely, and corruptly. Absolute and complete protection and redress against such injudicious or im *336 proper exercise of tbe power, is, in its nature, as to many cases, impossible to be given. In tbe organization and maintainance of government, it is impossible to avoid tbe necessity of reposing power in functionaries, whose action must be final and inevitable. Often and generally, checks and balances are arranged in tbe administration of government, so that tbe errors of one functionary can be corrected through tbe agency of another. But tbe ultimate power of redress, stops somewhere. And if it stops short of full relief to tbe party oppressed by tbe improper exercise of power, it is because of tbe unavoidable infirmity of government. But in tbe matter of correcting the improper use of tbe power of Courts to punish for contempts, tbe law furnishes a remedy, where tbe punishment is imprisonment, to a very large extent efficacious and speedy, though not always fully adequate to tbe purpose; and this remedy is by means of tbe writ of habeas corpus. Any Judge or Court, authorised by law to issue and exercise tbe power of tbe writ, may do so upon tbe application of tbe party aggrieved by imprisonment. Under and by virtue of this writ, tbe party imprisoned, may, and ought to be, discharged and released, if tbe imprisonment be illegal. If tbe judgment for tbe contempt be for cause for which tbe Court has not jurisdiction, and it so appears upon tbe record, the- judgment is void, and is no justification for tbe imprisonment. It stands on the/ law of universal application to tbe judgment of Courts, that if tbe Court has no jurisdiction, tbe judgment is void. If, therefore, it appears upon tbe face of tbe judgment *337 or the record of the proceedings upon which the judgment is rendered, that the judgment is upon a cause of contempt, for which the Court has no statutory power to punish, or if it so appears that the punishment inflicted is not within the power prescribed by statute for such cause, the judgment' will be void for want of jurisdiction of the Court, and will be no justification for the imprisonment or sentence, and no sufficient answer to the writ of habeas corpus.
It is not, however, to be understood of what is here said, that it will be' competent upon habeas corpus in cases of the kind on. hand, for the Judge or Court hearing the habeas corpus, to inspect and revise the evidence upon which the committing court acted, and to consider whether the evidence be enough to sustain the judgment of commitment, or not. The committing court may err as to the force and effect of the evidence on which it founds its judgment. Error of that kind, is not subject to revision upon proceedings by habeas corpus.
5th, At common law, a general judgment for contempt, that is, a judgment which does not specify the particular cause of contempt on which the judgment is founded, is held to suffice and be valid: See Summer’s case, 5 Iredell’s Rep., and authorities there cited. Erom this rule of the common law, we think proper to depart, to the extent to require that in the Courts of this State, it shall be essential to the validity of a judgment for contempt of the kind under review here, that it shall state upon its face the cause of contempt alleged^ as the ground of jurisdiction on which the judgment is *338 rendered. The ruling here made, in this respect, is the proper result from the legislative abridgment of the indefinite power at common law, vested in the courts, to punish for contempts. The jurisdiction at common law, was indefinite and general. By statute here, it is confined to specific causes. It is, therefore, pursuant to the policy indicated by the Legislature, and warranted, in our judgment, by sound principle, to hold, that the alleged cause of contempt upon which the judgment is rendered, shall be set out upon the face of the judgment, as the ground of jurisdiction upon which the judgment must rest for its validity. In this way, the proper power of the Courts to vindicate their dignity and maintain their safety, efficiency and existence, may be, to a large extent, brought into harmony with the protection and safety -of the citizen, against the inadvertent or unauthorized exercise of the power of the Courts to punish contempts.
6th, fIt is far from the purpose of this opinion, to reduce the powers of the Courts to punish for con-tempts, below the fair requirement of the legislative enactments. Upon familiar principle, the legislative modification of a common law power of courts is to be strictly, rather than liberally, construed. The power in question is deemed by this Court, as it is and always has been ¡by ¡the Courts of England and America entitled to respect, absolutely vital to the efficiency, respectability, safety and existence of the judicial department of the government. Instead, therefore, of giving a strict construction to the clauses (the sub-sections) of the Code, which declare and limit the punishable causes *339 of contempt, the proper construction is to give them a liberal application to the cases which may arise in the exigencies of the Courts.
7th, A question has been made, as to the power of the Courts to control the publication of their proceedings, while in progress. Unquestionably the power exists — not, perhaps, by direct attachment of the publishing party after publication, but by the exclusion from the Court of parties who are there for the purpose of reporting the testimony or proceedings of the Court, except on condition of suspending publication till after the trial be completed, or such time before the completion as the Court may judge proper. In the case of the United States vs. Holmes, 1 Wallace Io, 1-11, it was the opinion of the Court there, under the Act of Congress of general character, similar to the enactments of the Code of Tennessee on this subject, that though the Court has no power to punish as for a contempt, the publication, during trial, of the testimony taken in a cause, yet it had the power to regulate the admission of persons within its own bar, and the proceedings there, and to exclude any person from coming or remaining in, for the purpose of taking testimony, against the order of the Court, for publication during the trial.
It must be obvious to all persons conversant with the administration of the courts, the absolute necessity of exercising, upon occasions, the power to prevent the publication of testimony and other proceedings, while the trial is going on. The safe, effectual and pure administration of the law would be difficult, and often impos *340 sible, did not the courts possess tbe right and the instant power to enforce the right.
Certainly it is improper in a Court, ordinarily, to transact its business in private, or arbitrarily and unnecessarily to exclude the public or any person from the Court, who demeans himself respectfully and quietly. Publicity is a vast influence to secure careful, wise and honest administration of official power. No order abridging publicity ought to be made, unless proper to secure the correct and effective administration of the law, upon a case where the publicity would be likely to defeat it. Such order need be rarely made, and is never proper, except when necessary to effect the ends of justice, in respect of the particular case in hand. After all, the power and the mode of preventing publication, must rest largely in the discretion of the Judge. It is, in its nature and the occasions and manner of its exercise, ordinarily without the possibility of control by a supervising Court.
Upon the principles declared in this opinion, these causes must be dismissed from this Court, and the su-persedeas granted herein be discharged.