# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 11, 2001 Session

## SUSAN KLAMON WHITON (LEEDOM) v. ALAN LOUIS WHITON

**Appeal from the Circuit Court for Sevier County**
**No. 88-109-I     Ben W. Hooper, III, Judge**

**FILED JULY 18, 2002**

**No. E2000-00467-COA-R3-CV**

This is a post-divorce proceeding that began with the Mother's petition for an increase in child support.  The Trial Court increased the child support and ordered a trust fund set up for the minor child.  The Trial Court held that the child support guidelines was constitutional.  Father appealed claiming that Tenn. Comp. R & Regs. 1240-2-4-.03(4), issued pursuant to T.C.A. 36-5-101, was violative of Section 1 of the 14th Amendment to the Constitution of the United States. Mother also appeals raising various issues. We reverse the Trial Court in its finding the Regulation in question is constitutional and vacate the judgment as to child support. We affirm in part the other holdings of the Trial Court as to a part of the  issues raised by Mother.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part**
**and Vacated in Part and Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which WILLIAM H. INMAN, SR. J., joined.  HERSCHEL P. FRANKS, J., filed a dissenting opinion.

Sarah Yarber Sheppeard and Jason H. Long, Knoxville, Tennessee, for the Appellant, Alan L. Whiton

Dale Alan Everett, Knoxville, Tennessee, for the Appellee, Susan K. Whiton (Leedom)

Paul G. Summers, Attorney General & Reporter, and  Kim Beals, Assistant Attorney General, Office of the Attorney General, Nashville, Tennessee, for the Intervening Petitioner, State of Tennessee

## OPINION

Alan Whiton and Susan Whiton were married October 1985.  They are parents of a daughter, Amanda Marie, born on May 7, 1986.  They separated in March 1988, when Father filed a complaint for divorce.  They were divorced by order entered September 5, 1989.

As pertinent here, the Trial Court entered an order on February 20, 1990, setting child support at $750 per month, which was less than the amount presumed to be appropriate by the Child Support Guidelines, finding that the

> rebuttable presumption created by Tennessee Statute and resulting regulations and/or Department of Human Services Child Support Guidelines is rebutted and the application of said guidelines would be unjust and inappropriate under the specific circumstances of this particular case.

Father was ordered to pay for the child's health insurance, one-half of non-covered medical expenses, and create

> an educational or special trust fund for the education of the minor child and contribute a minimum of $1,000.00 a year toward said trust fund for the benefit of the child's education or welfare.

At the time of the divorce in 1989, Father had custody of a minor son by a previous marriage, along with a court ordered obligation to child support for the minor child. Mother appealed the decision of the Trial Court and subsequently an agreed order was entered amending the judgment and dismissing the appeal. Child support remained at $750 per month.

Both parties remarried. Father had a second child, Alana, who was born in March of 1993.

The present litigation commenced when Mother filed a petition to modify child support on September 13, 1994, claiming the existence of a substantial change in circumstances, an increase in Father's income, and a significant variance between the support being paid and the Guidelines support presumption. Father filed a response denying any change in circumstances, denying any significant variance between the Guidelines presumption and the support payment, and affirmatively alleging compliance with existing court orders.

The record in this case is copious with long delays, animosity on Mother's part and refusal to co-operate with Father, in addition to Mother vacillating between changing attorneys and representing herself. Even since oral argument was had in this case Mother has again changed lawyers.

Approximately two and one-half years later, on April 14, 1997, the court entered the first order in the present litigation, setting child support at $1,312 per month, retroactive to September 13, 1994, and ordered an accountant be employed to determine the Father's net income in accordance with the Child Support Guidelines for 1994, 1995 and 1996, and that a further hearing be held to determine additional child support and contributions to the educational trust fund. Father began paying $1,312 monthly child support in May 1997.

Numerous pleadings were filed by the parties. Father filed, *inter alia*, a motion for a new trial, petition for change of custody, response to Mother's motion for summary judgment, motion to withdraw by Attorney Stokes and substitute Attorney Garrison, and a motion seeking to have the court declare the Child Support Guidelines unconstitutional. Mother filed, *inter alia*, a several motion for contempt and revocation of Father's licenses, a motion to increase child support, motion for attorney's fees, motion for summary judgment as to Father's petition to change custody, a trial brief, a supplemental trial brief, a notice of lien by Attorney Everett, notice of withdrawing as counsel by Attorney Everett, notice of appearance by Attorney Albiston.

An order was entered by the Trial Court on December 8, 1999, in which, *inter alia*, the Trial Court overruled Mother's motion for summary judgment concerning custody of the minor child finding that it was not a proper matter for summary judgment. The Trial Court reviewed the joint report submitted by the parties' respective accountants and increased the amount to be paid into the educational trust fund. In his memorandum opinion, he stated:

> Now in this case, there is no question, as I've indicated, that 21 percent of these figures that I keep going back to, $6,250 per month income, $10,000 per month income and even higher, if, in fact, the law has authorized or mandated that we go higher. Those amounts are just literally set in concrete. Obviously, the Courts are going to see that you reach the point of ridiculousness, or absurdity, or whatever word you might want to call it, when you begin dealing with someone like a professional basketball player making $2,000,000 a year.[1] And as was set out by Judge Koch in his [concurring] opinion[2]. .... He has actually begun to talk about the situations that's being created by the present state of the law and that it is getting into the area of affecting the constitutional rights of people, children, obligors for the payment of child support. He spends some time talking about the child of the first family as opposed to the child of the second family. I am going to consider the second child in this matter, which means that we should be dealing with 32 percent, I believe, isn't it? . . .
> And applying one half of that amount, which is 16 percent, to the excess. I find that to be an equitable resolution of considering the fact that there are two children and that the first child, which is the focus of this litigation, will receive into an educational trust fund only 16 percent. And I say only 16 percent to distinguish from the 21 percent of whatever that would compute to be on monthly income in excess of those figures. Quite frankly, I've not determined what that might be but I have an idea that is eventually, and by the time this child is 18 years of age. . .that it will be

---

[1]The Trial Court was referring to *Lee v. Askew*, Court of Appeal No. 02A01-9805-JV-00133, W. S. at Jackson, 1999 Tenn. App. LEXIS 182, filed March 17, 1999.

[2]The Trial Court was referring to the concurring opinion of Judge William C. Koch, Jr., *in State ex rel. Randolph v. Poteet*, Court of Appeals No. 01-A-01-9808-JV-00419, M. S. at Nashville, 1999 Tenn. App. LEXIS 176, filed March 17, 1999.

a sum of money far in excess of what would be required to send her through many many years of a very expensive education. . . I don't hesitate to say, that what I have done today is not fair to Dr. Whiton.

While Mother was representing herself at this hearing and complaining about the length of time this case had taken to get to this point, the Trial Court reminded her "let me point out one more time, this Court does not schedule your hearings for you. If you want to be heard, you have got to let me know. . .."

Father filed a Notice of Appeal from the December order.

A hearing on the motion regarding the constitutionality of the Guidelines, along with other various motions, was held on March 6, 2000. By order entered on September 5, 2000, the Trial Court found the guidelines to be constitutional. The court reversed its prior ruling and required that Father pay 21% rather than 16% of his income in excess of $15,000 per month into an educational trust for the minor child. In reaching this conclusion, the Court concluded that its prior consideration of Father's other daughter was prohibited by the Guidelines. In its order, the Trial Court decreed:

1. In reference to Defendant's previously pending Motion to Find the Tennessee Child Support Guidelines Unconstitutional, the Court now rules that said Guidelines are Constitutional.

2. The Defendant will continue to pay the minor child's medical insurance premiums until the child attains age eighteen (18) or graduates from high school, whichever is later; out-of-pocket expenses shall continue to be borne equally by the parties.

3. The purchase of fixed assets by the Defendant shall be deducted from the Defendant's gross income in estimating net income for child support purposes.

4. The Defendant's working interests in oil and gas, so called "passive losses," shall also be deducted from the Defendant's gross income in estimating net income for child support purposes when the interest shows a loss; however, when the oil and gas interests show a profit, such profit shall be included in the Defendant's calculation of gross income.

5. The Court lets stand its prior ruling and finds that the Defendant may deduct the cost of his yearly disability premiums from his gross income since, if the Defendant became disabled, that income would be subject to child support and therefore is an insurance that benefits the minor child.

6. The Court, however, reverses its prior ruling and finds that the Defendant's yearly health insurance premiums on himself, his spouse and his other minor child shall not be deducted from the Defendant's gross income in estimating his net income for child support purposes.

7. The Court further reverses its prior ruling and finds that the Defendant shall pay Guideline child support directly to the Plaintiff and shall Order that twenty-one percent (21%) of the excess of Ten Thousand Dollars ($10,000.00) be placed in an

-4-

Educational Trust Fund with the residual to revert to the Defendant when the minor child is no longer in school. . ..

8. The Court finds that its prior ruling shall stand concerning the fees of the Plaintiff's previous attorney, Alan Everett, and Plaintiff's expert witness accountant, Leroy Bible, such that said fees shall be paid out of the Educational Trust Fund, but since the Defendant's prior Educational Trust holdings were in a mutual fund and the Defendant paid the fees outright, the issue is now moot.

9. The Court suggest that counsel attempt to agree upon how the Educational Trust Fund be set up, who will administer the Trust, who will be the Trustee, and when any remaining proceeds will be returned to the Defendant. The Court notes that if counsel is unable to reach agreement, that this case be set for hearing.

10. The Court notes that counsel for the Plaintiff and the Defendant shall meet to set current child support at Twenty-one Hundred Dollars ($2,100.00) per month with Guideline child support going to the Plaintiff for the benefit of the minor child and twenty-one percent (21%) of the overage going to the Educational Trust Fund for the minor child.

11. The parties agree that a child support arrearage for the years 1994 through 1999 is owing. The Defendant has paid Thirty-Four Thousand Seven Hundred Seventy-Seven Dollars and Thirty-Two Cents ($34,777.32); the Plaintiff has presented a document to the Defendant and the Court showing that there is a balance due and owing to the Plaintiff of Four Thousand Nine Hundred Nineteen Dollars and Twenty-Four Cents ($4,919.24). The Court finds that this is an arrearage and notes that Defendant's counsel has said he would go over these numbers with the Defendant.

12. Concerning the Educational Trust Funds, the interest that the current Educational Trust Fund has been earning shall be credited to the Defendant except for the twelve percent (12%) simple interest arrearage which shall be calculated and presented, if possible, in an Order to be presented to this Court. Again, if agreement is impossible, the case will be set for a hearing.

13. The Court finds that the Defendant has been in civil contempt of the Court's Order for failure to abide by the prior Order of the Court. The Court imposes a ten (10) day jail sentence, which is suspended, and imposes a Fifty Dollar ($50.00) fine, which is waived.

14. The Motion for Attorney's Fees filed by Plaintiff's prior counsel, Alan Everett, is denied.

15. The Defendant's Motion to Stay Execution of the Judgment Pending the Appeal is reserved for sixty (60) days.

Mother then filed another petition for contempt rather than set the case for hearing as the Trial Court ordered. Mother filed a Notice of Appeal on January 31, 2001.

In the Trial Court's final order entered on March 6, 2001, Father, Mother and Sevier County Bank were appointed co-trustees of the Alan L. Whiton Trust Agreement and were directed to pay the expenses of all books, tuition, and room and board incurred by the minor child. All arrearage

for child support and the educational fund were to bear interest at 12% per annum. The Trial Court denied Mother's petition for attorney's fees and dismissed the petition for contempt.

ISSUES

Mother presents the following issues for our consideration:

1. Whether it is error or in other ways, should the Court of Appeals exercise its supervisory authority over the Trial Court in this case to require that T.C.A. 36-5-405(B) (which requires a hearing on petitions to modify child support be heard in 30 days) be complied with?
2. Whether under the totality of the circumstances of this case, the appellant/Mother has received a just and economically reasonable ruling from the Trial Court?
3. Whether the Trial Court erred in setting up a trust in this case?
4. Whether the Trial Court erred in ordering the return of moneys in the trust to the obligor?
5. Whether the amount of support actually flowing to the Mother is correct including, but not limited to, whether the whole or a portion of the amount flowing to the trust should go directly to the Mother?
6. Whether the Trial Court erred in refusing to hold the Father in contempt of court for numerous contempt actions filed in this case, including, but not limited to, the contempt filed when Lucinda Albiston was attorney of record?
7. Whether the Trial Court erred in the awarding of the amount of attorneys fees in this case?
8. Whether the Trial Court erred in refusing to award attorneys fees for the numerous contempt petitions filed in this case?
9. Whether the Trial Court erred in failing to force the disclosure of the first trust and in not holding the obligor in contempt for not making this disclosure?
10. Whether the Trial Court erred in allowing passive and other losses to be deducted from income in this case?
11. Whether the Trial Judge erred in failing to sanction, or in other ways properly deal with, allegations of delay, failure to ask for records of insurance and college trust funds, requests for attorney fees and all other motions, pleadings, claims, trial and hearing tactics engaged in by the respondent Father. The Mother, Susan Whiton Leedom, alleges that these tactics are abusive. Should said tactics be dealt with by, and subject to, sanctions and other actions by the court to stop said abuse?
12. Whether the Trial Court erred by reviewing financial statements subpoenaed from a bank that were examined by the judge and then sealed and placed in the file without review by either attorney?
13. Whether the Trial Court erred in not finding the respondent in default or otherwise sanction him for not complying with reasonable discovery requests filed on or about June 19, 1996?
14. Whether the Trial Court erred in not granting the summary judgment filed by the Mother on August 3, 1998, relating to custody of the child.

Father has set forth the following issues for our consideration:

1.	Whether the 1994 Amendment to the child support guidelines regulations, which excludes consideration of support paid on behalf of children in the absence of a court order, is both facially unconstitutional and unconstitutional as applied to this case.

2.	Whether the Trial Court's non-discretionary, mechanical application of the guidelines in this case produces an absurd result abhorrent to the dictates of justice and equity and should be reversed.

The State has intervened averring that the Tennessee Child Support Guidelines do not violate the Constitutional requirement of equal protection and separation of powers, and do provide ample due process in determining the child support obligation of the non-custodial parent.

## DISCUSSION

The Trial Court's findings of fact are subject to a *de novo* review upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman*, 974 S. W. 2d 689, 692 (Tenn. 1998). The Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). With respect to the Trial Court's finding Father in contempt on one occasion and its refusal to find Father in contempt on other occasions, the Trial Court's findings regarding the issue of contempt is reviewed using an abuse of discretion standard. *Wright v. Quillen*, 909 S.W.2d 804, 814 (Tenn. Ct. App. 1995); *Quality First Staffing Serv. v. Chase-Caveat Serv., Inc.*, 1999 Tenn. App. LEXIS 293, No. 02 A01-9807-CH-00205, 1999 WL 281312, at * 3 (Tenn. Ct. App. May 7, 1999), *no appl. perm. app. filed*; *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (Tenn. 1964).

1.

First, we will address Mother's issue numbered one as to whether this Court should exercise its supervisory authority over the Trial Court in this case to require that the Trial Court comply with T.C.A. 36-5-405(b).[3] Because of various reasons, the trial judges granted continuances in this matter. The "granting or refusing to grant a continuance rests within the sound discretion of the Court, and the Trial Court's decision will not be reversed in the absence of a clear showing of abuse of discretion." *Morrow v. Drumwright*, 202 Tenn. 307, 304 S.W.2d 313 (1957); *Barber & McMurry*

---

[3]T.C.A. 36-5-405. Actions for support.

(a) . . .

(b) When a petition is filed, the clerk shall designate a hearing date on the notice prescribed in this part or, in the alternative, shall designate a hearing date on the summons to be served by the sheriff if the petitioner elects to proceed by having the sheriff serve process to initiate this proceeding. The hearing date shall be within thirty (30) days of the date the petition is filed. If process is served by certified mail, the clerk shall then send a copy of the completed petition, testimony, and notice to respondent by certified mail, return receipt requested. The clerk shall give a copy of completed notice, petition, and testimony to petitioner.

*v. Top-Flite Development*, 720 S.W.2d 469 (Tenn. Ct. App. 1986). There was no abuse of discretion by the Trial Judge in this action in granting the continuances.

The record in this case is copious with Mother's eloquence in expressing her animosity toward Father and her refusal to co-operate with Father. Moreover, this matter has a long history of procedural ineptness and delay on the part of Mother, particularly because she represented herself *pro se* either with or without an attorney present, and in addition Mother changed attorneys frequently. It is, however, the basic duty of Mother, either *pro se*, or through legal counsel, to proceed with and prosecute her action; neither the Court nor the defendant has the responsibility to prepare the case. *See generally, Mills v. Bank of Roane County*, 1991 Tenn. App. LEXIS 554 (Tenn. Ct. App. 1991). As the Trial Court reminded Mother "let me point out one more time, this Court does not schedule your hearings for you. If you want to be heard, you have got to let me know. . .." Moreover, this issue is moot on appeal as to mandating that trial clerks be in strict compliance with T.C.A. 36-5-405(b). In the case of *Knott v. Stewart County*, 185 Tenn. 623, 626, 207 S.W.2d 337, 339 (Tenn. 1948), the Court quoted with approval from *State ex rel. v. Wagoner*, 88 Tenn. 290, 292, 12 S.W. 721 (1889), as follows:

> This court cannot settle abstract questions, however important, or however simple they may be, upon the supposition that they may hereafter arise. They may never do so.

It is too well established and settled to require further citation that in this State issues, which have become moot, will be dismissed. We find this issue to be without merit.

2.

Next, we will examine together Mother's issues numbered 6, 7, 8, 9, 11, and 13, which deal with whether the Trial Court erred in refusing to find Father in contempt and/or sanction him in various instances, and refusing to award Mother attorney fees on the various contempt petitions filed by Mother.

> The power of courts to punish contempt can be traced back as far as twelfth century England. *See* Ronald L. Goldfarb, *The Contempt Power* at p. 9 (1963). Contempt was firmly established as a legal concept by the fourteenth century and it was a principle adopted and incorporated into American jurisprudence by the colonists. The Contempt Power at p. 19 (1963). Therefore, the inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts. *State v. Galloway*, 45 Tenn. 326, 331 (1868). Indeed, at common law, the power of courts to punish contempt was vast and undefined. *Id.* at 330. Because unlimited, undefined discretionary power carried with it the potential for abuse, specific statutory provisions were adopted to limit and define the conduct

-8-

punishable by contempt. *Galloway*, 45 Tenn. at 340-344; *In Re Hickey*, 149 Tenn. 344, 258 S.W. 417 (1924).

*Black v. Blount*, 938 S.W.2d 394 (Tenn. 1996).

While the power to punish for contempt may and should be used in an appropriate case, it should not be used unless the case clearly calls for its exercise. The power should be exercised by the Trial Court only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice. The matter of determining and dealing with contempt is within the trial court's sound discretion, subject to the absolute provisions of the law and its determination is final unless there is plain abuse of discretion. *See Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908 (Tenn. 1964). We should not reverse for "'abuse of discretion a discretionary judgment of a trial court unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining.'" *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999) (quoting with approval *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)); *Brooks v. United Uniform Company*, 682 S.W.2d 913 (Tenn. 1984).

When we are called upon to review a discretionary act of a trial judge, this Court will not disturb that ruling absent an affirmative showing that the trial judge abused his discretion. *Hemmer v. Tennessee Electric Power Co.*, 24 Tenn. App. 42, 139 S.W.2d 698 (1940). The term "abuse of discretion" means just what it says. It does not mean that the appellate court must determine whether it would have decided the matter in the same manner if it had been called upon to exercise that discretion. Instead, the appellate court must consider whether the lower court's exercise of its discretion went beyond the bounds of a fair exercise of discretion. 5 Am. Jur. 2d, Appeal And Error, § 774, n.8 (1962). Furthermore, it is well settled that a Trial Court is vouchsafed with wide discretion as to the allowance of attorney fees. *Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn. Ct. App. 1987).

The Trial Court found Father in civil contempt only once. The Trial Court imposed a ten day jail sentence, which it suspended, and imposed a $50.00 fine, which it waived. The rest of the contempt petitions were dismissed. Additonally, the Trial Court ordered that certain fees be paid from the educational trust fund. However, Father paid them directly, and the Trial Court found the issue to be moot at that point. Furthermore, the Trial Court denied Mr. Everett's motion for attorney's fees. We find no abuse of discretion in that regard because in the record before us it is difficult to determine just when Mr. Everett was only in attendance in the Trial Court with Mother while she was representing herself and when Mr. Everett was actually her legal counsel.

3.

We next address Mother's issue numbered 12 as to whether the Trial Court erred in examining certain financial records, which Mother subpoenaed from the bank and which were sealed upon its finding that the documents shed no new light on the issues before the Trial Court.. For some reason about which the record is silent, the bank filed the documents directly with the Trial

Court.  The court reviewed them and then sealed them finding that there was nothing in them different from what was already before the court.  We have examined the file which was placed under seal by the court and find nothing contrary to the decision of the Trial Court.  In examining the documents which were supposedly sealed by the Trial Court, we found them unsealed.  Either of the parties' attorneys, while having the record in their possession preparing their briefs, had the opportunity to examine the documents and bring the discrepancies, if any, to the attention of this Court.  They raised nothing contrary to the Trial Court's finding of non-relevancy.  Although the Trial Court may have erroneously excluded such evidence, it is harmless error and Mother's issue is without merit.  *See* Rule 36(b);  *Blaylock and Brown Construction, Inc. v. AIU Ins. Co.,* 796 S.W.2d 146 (Tenn. Ct. App. 1990).

4.

The next issue we will address is Mother's issue numbered 14 as to whether the Trial Court erred in not granting the motion for summary judgment filed by Mother on August 3, 1998, relating to the custody of the minor child.  Father filed a motion seeking a change of custody based upon the minor child's expression of preference for living with Father and other allegations by the minor child of happenings in Mother's home.  Mother contested the change of custody.  At a later date, minor child decided she wanted to stay with her Mother.  Father respected the child's decision and did not pursue the change of custody.  He orally removed the issue from the Trial Court's consideration.  Mother had filed a motion for summary judgment and attempted to pursue it.  The motion for summary judgment was appropriately denied by the Trial Court as it was not a proper matter for summary judgment.

Our Supreme Court, in *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993) has clarified the proper summary judgment analysis to be applied in Tennessee.  In the opinion authored by Justice Frank F. Drowota, III, he explained Tenn. R. Civ. P. 56, as follows:

> Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Thus, the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial. (Emphasis in original).
>
> First, when the facts material to the application of a rule of law are undisputed, the application is a matter of law for the court since there is nothing to submit to the jury to resolve in favor of one party or the other.  In other words, when there is no dispute over the evidence establishing the facts that control the application of a rule of law, summary judgment is an appropriate means of deciding that issue.
>
> Second, to preclude summary judgment, a disputed fact must be "material".  A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.  Therefore, when confronted with a disputed fact, the court must examine the elements of the claim or defense at issue

in the motion to determine whether the resolution of that fact will effect the disposition of any of those claims or defenses. By this process, courts and litigants can ascertain which issues are dispositive of the case, thus rendering other disputed facts immaterial.

Third, when the evidence or proof in support of or in opposition to a summary judgment motion establishes a disputed fact, and the fact is material, as we have defined that term, the court must then determine whether the disputed material fact creates a genuine issue within the meaning of Rule 56.03. Proceeding from the premise that Rule 56 is intended to avoid unnecessary trials, the test for a "genuine issue" is whether a reasonable jury could legitimately resolve that fact in favor of one side or the other. If the answer is yes, summary judgment is inappropriate; if the answer is no, summary judgment is proper because a trial would be pointless as there would be nothing for the jury to do and the judge need only apply the law to resolve the case. In making this determination, the court is to view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor. And, again, "genuine issue" as used in Rule 56.03 refers to disputed, material facts and does not include mere legal conclusions to be drawn from those facts.

Fourth, the party seeking summary judgment has the burden of demonstrating to the court that there are no disputed, material facts creating a genuine issue for trial, as we have defined those terms, and that he is entitled to judgment as a matter of law. A conclusory assertion that the nonmoving party has no evidence is clearly insufficient. When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary. The nonmoving party may not rely upon the allegations or denials of his pleadings in carrying out this burden as mandated by Rule 56.05. The evidence offered by the nonmoving party must be taken as true. Moreover, the facts on which the nonmovant relies must be admissible at the trial but need not be in admissible form as presented in the motion (otherwise an affidavit, for example, would be excluded as hearsay). To permit an opposition to be based on evidence that would not be admissible at trial would undermine the goal of the summary judgment process to prevent unnecessary trials since inadmissible evidence could not be used to support a jury verdict.

In sum, there can be no doubt that summary judgment is a helpful device, in appropriate cases, for the just, speedy, and inexpensive resolution of litigation. Preparing the moving and opposition documents will require the parties to analyze the case, define the legal and factual issues with a high degree of precision, and marshal the relevant evidence. However, in order to fulfill its intended utility, Rule 56 must be properly invoked by the parties and properly applied by the courts. Appropriate application of the Rule is more likely to be achieved if litigants and courts alike keep in mind that the purpose of a summary judgment proceeding is not the finding of facts, the resolution of disputed, material facts, or the determination of

conflicting inferences reasonably to be drawn from those facts. "The purpose is to resolve controlling issues of law, and that alone." *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988) (citing *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 388 (Tenn. 1986) and *Evco Corp. v. Ross,* 528 S.W.2d 20, 25 (Tenn. 1975)); *see also Rollins v. Winn Dixie,* 780 S.W.2d 765, 767 (Tenn. App. 1989) (summary judgment "is an efficient means to dispose of cases whose outcome depends solely on the resolution of legal issues."). When a material fact is in dispute creating a genuine issue, when the credibility of witnesses is an integral part of the factual proof, or when evidence must be weighed, a trial is necessary because such issues are not appropriately resolved on the basis of affidavits.

*Byrd v. Hall*, at 214-216.

To determine if summary judgment was appropriate or in appropriate, we are to consider the evidence in a light favorable to Mother and allow all reasonable inferences in her favor. We must also consider whether a factual dispute exists; whether the disputed fact is material to the outcome of the case; and whether the disputed fact creates a genuine issue for trial. The facts raised in the motion for change of custody and Mother's answer, raise substantial factual disputes which are material to the change of custody. The Trial Court was correct in its determination that the change in custody was not a proper subject for resolution by summary judgment. There is no merit in this issue.

5.

We now come to the constitutional issues presented by Father. The briefs submitted by Father's and the State's counsel on these issues were excellent.

The pivotal issue raised in this appeal is whether the following rule and regulation promulgated by the Department of Human Services, pursuant to T.C.A. 36-5-101, violates the Equal Protection Provision contained in Section 1 of Amendment 14 to the United States Constitution:

Children of the obligor who are not included in a decree of child support shall not be

considered for the purposes of reducing the obligor's net income or in calculating the guideline amount. Tenn. Comp. R & Regs. 1240-2-4-.03(4).

As to this issue we rely upon our decision in *Gallaher v. Elam,* E2000-02719-COA-R3-CV (January 29, 2002) that the State should not discriminate between children based solely on the fact of their parents being divorced. There is not legitimate state purpose in allocating more of a parent's income to one child than another. This is unconstitutional and as such is void.

6.

Finally, Mother filed a motion to admit post judgment facts along with a motion to dismiss due to unclean hands. The motions were deferred to the panel of judges designated to hear the appeal on the merits. We do not find the motions to be well taken and they are denied.

7.

We believe it appropriate to remand this case to the Trial Court for a determination of child support by calculating:

1. An award under the guidelines for two children and make an award of one-half of that amount to Amanda; or

2. Determine the appropriate amount under the guidelines for one child, deduct that amount from Father's net monthly income, and make an award to Amanda applying the guideline percentage for one child.

Additionally, the Trial Judge is to use his discretion in setting an appropriate amount for an educational trust fund for Amanda. To have an educational trust fund that is "a sum of money far in excess of what would be required to send her through many many years of a very expensive education" is unjust and not required under the Guidelines. We agree with the Trial Court that Father should have the residue in the Educational Trust Fund when Amanda has completed her education. Furthermore, child support is to support a child, not to give a divorce parent alimony which was not awarded in the original decree. We find that under the totality of the circumstances of this case, Father has not received a just and economically reasonable ruling from the Trial Court.

In view of our decision on these issues, we pretermit consideration of Mother's remaining issues.

For the foregoing reasons the judgment of the Trial Court is affirmed in part, vacated in part, and the cause remanded for proceedings not inconsistent with this opinion. Costs of appeal are adjudged one-half against the State and one-half against Susan Klamon Whiton (Leedom).

_____

HOUSTON M. GODDARD, PRESIDING JUDGE